COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2367-CR**

Cir. Ct. No. **2016CF11**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JACOB M. BACON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Affirmed.*

Before Reilly, P.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jacob Bacon appeals a judgment of conviction for first-degree sexual assault of a child and an order denying his postconviction motion. He argues on appeal that he received constitutionally ineffective assistance as a result of his trial attorney's failure to seek dismissal of the action for an alleged speedy trial violation, as well as his attorney's failure to object at trial to the admission of a video recording of a forensic interview with the victim. We conclude Bacon's trial attorney did not perform deficiently because no speedy trial violation occurred, and she strategically declined to object to the video recording's admission. Accordingly, we affirm.

## BACKGROUND

¶2 On January 12, 2016, the State filed a complaint charging Bacon with two counts of first-degree sexual assault of a child involving his daughter, Kristy.[1] An Information added a single count of exposing his genitals to a child. For reasons described more fully below, his trial commenced on May 29, 2018, more than two years after the action was filed.

¶3 At trial, the State presented evidence that in July 2014, Kristy had told two of her grandmother's neighbors that Bacon had engaged in sexual contact with her. Eventually her allegations were reported to the police, and a forensic interviewer conducted a recorded interview with Kristy in September 2014. During the interview, Kristy claimed that while they were at her grandfather's

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we refer to the victim using a pseudonym.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

house, Bacon had twice touched her vaginal area with his "wiener," once after a shower and once while she was in her bed.

¶4 The video recording of the forensic interview was played at Bacon's trial. When discussing the video's admissibility outside of the jury's presence, the circuit court noted that Kristy had turned twelve during the pendency of the action, and "the criteria for admissibility [are] very different before twelve and after twelve." Bacon's attorney stated she had no objection to the video being played. Kristy appeared briefly as a witness at trial. She testified that her father had raped her while she was in her bed, but she did not mention the alleged shower assault.

¶5 The defense theory was that Kristy had fabricated the allegations for attention. Bacon testified and denied he had assaulted his daughter, maintaining that he had touched her vaginal area with his hand only to apply cream for a yeast infection. Bacon's trial attorney spent an extensive portion of her closing argument highlighting inconsistencies in Kristy's various statements, including in Kristy's descriptions of the assaults during her forensic interview. In particular, Bacon's attorney emphasized that Kristy had claimed during the interview that the assault in her bedroom had occurred at five o'clock in the morning when she had been sleeping—which was impossible, the defense maintained, given the work schedules of Kristy's family.

¶6 During deliberations, the jury requested to view the video of Kristy's forensic interview. That request was granted, and the jury was also provided a copy of the interview transcript. The jury ultimately acquitted Bacon of one count of first-degree sexual assault and of exposing his genitals. It found him guilty, however, on the second count of first-degree sexual assault, and the circuit court sentenced him to a total bifurcated sentence of forty years' imprisonment.

¶7      Bacon filed a postconviction motion seeking a new trial based on ineffective assistance of trial counsel.  The motion alleged Bacon's trial attorney was ineffective for: (1) failing to move to dismiss the case on speedy trial grounds, and (2) failing to object to the State's use of the forensic interview recording at trial.  The circuit court held a ***Machner***[2] hearing, at which Bacon's trial counsel, Mackenzie Renner, testified.

¶8      Renner stated that she was aware Bacon had made a speedy trial demand but she did not bring a motion because "nothing jumped out [to her] as being inappropriate at that point in time" regarding the delays.  Renner also testified that she consciously decided not to object to the video of the forensic interview because Kristy's statements were "incomprehensible" and "[s]he had oftentimes mixed up what she was saying and her timeline made little to no sense."  Consequently, Renner believed that the State's reliance on a "confusing" video was better for Bacon than having Kristy, who was older and had since been in therapy, providing detailed trial testimony about her allegations.

¶9      The circuit court denied the motion.  It focused primarily on the lack of prejudice to Bacon as a result of the delays in bringing him to trial, but it also stated that it "wouldn't have granted any dismissal on this case because I knew the reasons for the delay and frankly the defendant had agreed to many of the delays."  Regarding the video, the court agreed with Renner's assessment that Kristy's statements during the interview, though accusatory, had "tremendous inconsistencies" and were "incomprehensible" and "convoluted."  The court determined that it would have been more damaging to Bacon if the video had been

---

[2] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

4

excluded, as the State would have further developed Kristy's live testimony. Accordingly, the court determined that Renner had not performed deficiently. Bacon now appeals.

## DISCUSSION

¶10 The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.* If the defendant fails to establish either prong, we need not address the other. *Id.*

¶11 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

*I. Trial counsel was not deficient for failing to seek dismissal on speedy trial grounds.*

¶12    Bacon first argues his attorney was deficient for failing to move to dismiss the charges based upon a speedy trial violation.[3]  When assessing whether a speedy trial violation has occurred, we use the four-factor test established in ***Barker v. Wingo***, 407 U.S. 514 (1972).  *See **State v. Provost***, 2020 WI App 21, ¶26, 392 Wis. 2d 262, 944 N.W.2d 23.  We consider:  (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted the right to a speedy trial, and (4) whether the delay prejudiced the defendant.  ***Id.***  Using those factors, we weigh the conduct of the defense and the prosecution and balance the State's right to bring the defendant to justice against the defendant's right to have the charges against him or her expeditiously resolved.  ***Id.***  Whether Bacon's speedy trial right was violated is a question of law that we review de novo, although we accept the circuit court's factual findings unless they are clearly erroneous.  ***Id.***, ¶25.

¶13    We conclude Bacon's right to a speedy trial was not violated, and therefore, his trial attorney was not ineffective for failing to seek dismissal on that ground.  *See **State v. Toliver***, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (holding that counsel is not ineffective for failing to pursue meritless arguments).  The delay in bringing Bacon's case to trial exceeded one year and was therefore presumptively prejudicial.  *See **State v. Urdahl***, 2005 WI App 191, ¶12, 286 Wis. 2d 476, 704 N.W.2d 324.  As a result, we must assess the length of

---

[3] Although Bacon does not specify, we presume he raises his speedy trial claim under both the federal and state constitutions.  The test is the same regardless of the source of the speedy trial right.  **State v. Urdahl**, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324.

the delay, the reasons for it, and the extent to which Bacon asserted his speedy trial right. *See id.*

¶14 The first delay occurred as a result of Bacon's request for judicial substitution and is not counted against the State.[4] Bacon was charged on January 12, 2016. His initial appearance occurred over two dates in late January, at which time he was placed on a $10,000 cash bail. A three-day trial was set for mid-September 2016 before Judge Kristine E. Drettwan. Following the substitution request, Bacon's case was assigned to Judge Phillip A. Koss, and the trial was set for early December 2016. Bacon requested a speedy trial on September 16, 2016, which the circuit court noted was largely immaterial at that time given that the trial was already set to occur within one year of Bacon's charging.

¶15 The next delay, though occasioned by the State's request for an adjournment, is also not counted because Bacon affirmatively consented to the delay. At the final pretrial hearing on November 29, 2016, the State requested that the trial be adjourned based on difficulty getting records concerning other acts evidence from Jefferson County. In exchange for Bacon's consent to the adjournment, the State offered to stipulate to converting Bacon's cash bail to a signature bond. Bacon's attorney, Michelle Dietrich, stated she had no objection given that Bacon would be released from custody. The circuit court asked Bacon personally whether he understood that he "could go ahead to trial and maybe in the long run it would be better to just get the trial done and stay in custody than get out and have it postponed? Do you understand there is a cost-benefit analysis

---

[4] We take judicial notice of the contents of the CCAP record for Walworth County case No. 2016CF11. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

here?" Bacon confirmed that he understood and that he wanted to reset the matter with his bond amended.

¶16 It was not until April 2017 that the new trial date was set, which was in August of that year. The State effectively concedes it was still attempting to obtain records from Jefferson County during this time, and those efforts apparently continued into June 2017. Even if we assume some portion of the approximately four-month period between late November 2016 and April 2017 fell outside of the stipulation and should be counted against the State, on balance, the totality of the circumstances do not warrant relief.

¶17 The remainder of the delays in bringing Bacon to trial were occasioned by changes in his representation and the ordinary delays that accompany selecting new trial dates. Dietrich requested an adjournment in July because her orders for military duty conflicted with the trial date. She stated Bacon had been informed of the situation and agreed with the adjournment request. A new trial date was set for November 29, 2017, but in September, Dietrich sought to withdraw because her employment with the State Public Defender's Office was ending. Attorney Francis Raff was appointed to represent Bacon. Raff filed a motion to adjourn the trial on November 6, 2017, based on his belief that he needed more time to prepare, but at the motion hearing on November 21, he withdrew from the representation. Renner was appointed to represent Bacon in early December 2017 and took the matter to trial beginning on May 29, 2018.

¶18 The actions of Bacon's attorneys in requesting adjournments and withdrawal are not counted against the State. "A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily

8

against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily." *Urdahl*, 286 Wis. 2d 476, ¶26 (citation omitted). Conversely, if a delay is caused by the defendant, it is not counted. *Id.* This includes delays occasioned by a defendant's assigned counsel's inability or unwillingness to move the case forward. *Vermont v. Brillion*, 556 U.S. 81, 92-93 (2009).

¶19 In light of the foregoing, we conclude that a significant portion of the delay that occurred in this case was either attributable to Bacon or consented to by him. A portion of the delay was undoubtedly administrative, and the circuit court noted that scheduling is particularly difficult in Walworth County, where there are "a lot of trials." Delay will generally accompany any request to reschedule a trial, and scheduling difficulties are "counted against the [S]tate, but [are] not weighted heavily." *Urdahl*, 286 Wis. 2d 476, ¶31; *see also id.*, ¶26. On balance, these considerations compel the conclusion that Bacon's speedy trial right was not violated under the circumstances. Attorney Renner was therefore not ineffective for failing to raise a speedy trial issue.

*II. Trial counsel strategically declined to object to the State's use of the forensic interview at trial.*

¶20 Audiovisual recordings of a child are admissible at trial as provided in WIS. STAT. § 908.08. As relevant here, the recording shall be admitted if the trial or hearing at which the recording is offered will commence "[b]efore the child's 12th birthday" or "[b]efore the child's 16th birthday and the interests of justice warrant its admission under sub. (4)." § 908.08(3)(a)1.-2. Bacon, noting that Kristy had turned twelve by the time of trial, argues "it is highly unlikely that,

9

had Renner objected, the [S]tate could have established that the 'interests of justice' required the use of the video-recording."

¶21 Even assuming that is true, both Renner and the circuit court noted that the video's exclusion would have resulted in the State further developing Kristy's live, in-person testimony. Renner found this problematic because Kristy "had been talking about this event for almost two years." She testified she believed that Kristy "ultimately would have a much more coherent story and … impeaching her would be much more difficult when she appeared on the stand after going through therapy and was going to be much more sure of herself and her story."

¶22 By contrast, Renner testified that in the video of the interview, Kristy appeared confused, her statements were "incomprehensible," and her explanation of what occurred was "very unclear." When asked to explain further, Renner responded:

> As I've already stated, her timeline was very messy. It was hard to understand. She would talk about things that happened in the shower and then later she would say they happened in the bedroom. Then she would talk about things that happened in the bedroom and later would say that they happened in the bathroom and the like. Her story was very incoherent.

> Additionally, she did not actually identify Mr. Bacon until the very end of the video after the officers had to come back and do that, and asked specifically who it was that she was talking about. Overall, the video was very hard to follow and her story changed consistently through it.

On cross-examination, Renner confirmed that it was her strategic decision not to object to the video based upon her belief that the victim's detailed testimony at trial would have been more damaging.

10

¶23 We agree with the circuit court that Renner was not deficient in this respect. Her decision not to object to the video was well within the wide range of professionally competent assistance based upon her belief that Kristy's statements during the forensic interview were incoherent and confusing. Renner concluded it was preferable to attack the allegations Kristy made in the video rather than the more coherent allegations she might make during live trial testimony. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

¶24 Bacon argues Renner's decision not to object was unreasonable because "[t]here can be no legitimate strategic reason for not eliminating inculpatory evidence if counsel has the opportunity to do so." We do not agree with this assessment. Objecting to the video would not have "eliminated" the evidence; it would merely have shifted the means by which the State proved its case from Kristy's recorded statements to her live statements. The seemingly incoherent and confusing nature of Kristy's claims on the video formed a key part of the defense. We will not second-guess a trial attorney's considered selection of tactics or exercise of professional judgment in the face of alternatives that have been weighed by trial counsel. *State v. Elm*, 201 Wis. 2d 452, 464, 549 N.W.2d 471 (Ct. App. 1996).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11