# COURT OF APPEALS
# DECISION
# DATED AND FILED

# October 3, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP653-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF2203

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

COREY D. WOODLAND,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MILTON L. CHILDS, SR., Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Corey D. Woodland appeals from a judgment of conviction for three counts of armed robbery and an order of the trial court denying his motion for postconviction relief without a hearing.[1] On appeal, Woodland raises four arguments. First, Woodland argues that his constitutional and statutory rights to a speedy trial and prompt disposition were violated. Second, Woodland argues that the evidence was insufficient to support his conviction for armed robbery charged in Count III. In his third and fourth arguments, Woodland then argues that his trial counsel was ineffective in failing to object to repeated references to Woodland's probationary status and in failing to object to the admissibility of a surveillance video. Upon review, we affirm.

## BACKGROUND

¶2 On May 14, 2018, the State charged Woodland with three counts of armed robbery, all as a habitual criminal repeater, in connection with the armed robberies of two GameStop stores and one AT&T store, all on the morning of May 9, 2018. As alleged in the criminal complaint, a male entered each of the stores and demanded money from the employees. In all three robberies, the individual was seen wearing a gray sweatshirt that was turned inside out, a black T-shirt, and worn out blue jeans with zippers on the back pockets, and the employees stated that the individual carried a gun wrapped in a plastic bag during each of the robberies. After one of the robberies, the individual was seen driving away in a four-door Nissan with an Illinois license plate, and an investigation

---

[1] For ease of reference, we refer to the lower court generally as the trial court. However, we note that the Honorable Milton L. Childs, Sr. was only one of several judges to preside over Woodland's case during the years it was pending in the circuit court.

indicated that a Nissan with Illinois plates had been rented to Woodland two days prior.

¶3      The trial court found probable cause to support the charges in the criminal complaint at Woodland's initial appearance on May 14, 2018, and he had a preliminary hearing on May 22, 2018, at which time he pled not guilty and was bound over for trial.

¶4      Following delays, the case proceeded to a three-day jury trial that took place on April 5, 6, and 7, 2021.  At the trial, the State presented the testimony of employees from one of the GameStop stores and the AT&T store, surveillance video of the robberies, the testimony of investigating officers, the testimony of Woodland's probation agent, and surveillance video from a Dollar Tree store where Woodland purchased blue latex gloves similar to the gloves worn by the suspect in the armed robberies.

¶5      The jury found Woodland guilty of all three counts of armed robbery, and Woodland was subsequently sentenced to a total of fourteen years of imprisonment, composed of eight years of initial confinement and six years of extended supervision.  His sentence was consecutive to any other sentence.

¶6      Woodland filed a motion for postconviction relief in which he argued that his rights to a speedy trial and prompt disposition were violated, the State failed to present sufficient evidence to sustain his conviction for the armed robbery charged in Count III, and his trial counsel was ineffective for failing to object to testimony about his probationary status and failing to object to the admission of surveillance video from the Dollar Tree store.

¶7 The trial court denied Woodland's motion without a hearing. Woodland appeals. Additional relevant facts are provided below.

## DISCUSSION

¶8 On appeal, Woodland raises the same four arguments. First, Woodland argues that his constitutional and statutory rights to a speedy trial and prompt disposition were violated. Second, Woodland argues that the evidence the State produced at his trial was insufficient to support his conviction for the armed robbery charged in Count III. Then, Woodland's third and fourth arguments allege ineffective assistance of trial counsel in failing to object to repeated references, particularly in the testimony from Woodland's probation officer, about Woodland's probationary status and in failing to object to the admissibility of the surveillance video from Dollar Tree. We address each argument in turn.

### I. Speedy Trial Demand

¶9 Woodland argues that his constitutional and statutory rights to a speedy trial and prompt disposition were violated. He asserts that his trial was adjourned ten times and this case languished for roughly thirty-five months before he stood trial in April 2021.

¶10 Initially, we address Woodland's argument that his statutory right to a speedy trial found in WIS. STAT. § 971.10 (2021-22),[2] and his right to a prompt disposition in WIS. STAT. § 971.11 were violated. On this point, we agree with the State that Woodland's argument that his statutory rights to a speedy trial and

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

prompt disposition are conclusory and Woodland fails to develop a properly supported argument. He merely asserts in a conclusory manner that his statutory rights to a speedy trial and a prompt disposition were violated. At best, Woodland makes merely passive references to § 971.10 and § 971.11, and he does not develop an argument by reference to either statutes' relevant subsections or case law. Thus, we do not address Woodland's statutory rights to a speedy trial and prompt disposition further, *see* **State v. Pettit**, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992), and we turn to Woodland's argument that his constitutional right to a speedy trial was violated.[3]

¶11    "Whether this right has been violated is a question of law that we review independently, although we accept any findings of fact made by the circuit court unless they are clearly erroneous." **State v. Provost**, 2020 WI App 21, ¶25, 392 Wis. 2d 262, 944 N.W.2d 23. We apply the four-factor test established in **Barker v. Wingo**, 407 U.S. 514 (1972). "That is, we consider: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) whether the delay prejudiced the defendant." **Provost**, 392 Wis. 2d 262, ¶26. We do so considering "the totality of the circumstances that exist in each specific case." **Id.**

¶12    Considering the **Barker** factors and the totality of the circumstances in this case, we disagree with Woodland that his constitutional right to speedy trial was violated. In reaching this conclusion, we first note that the State concedes that

---

[3] Furthermore, Woodland requests dismissal of his case as a result of an alleged violation of his statutory right to a speedy trial. However, the appropriate remedy for a violation of his statutory right to a speedy trial would be pretrial release, *see* WIS. STAT. § 971.10(4), and given that Woodland has already been tried and convicted, the relief permitted is no longer available.

the asserted delay of thirty-five months is presumptively prejudicial. *See Provost*, 392 Wis. 2d 262, ¶27 ("A postaccusation delay is considered to be presumptively prejudicial when it 'approach[es] one year.'" (citation omitted)). Thus, we accept that the delay in this case is presumptively prejudicial, and we turn to an analysis of the remaining factors. *See id.* ("It is only necessary to inquire into the other *Barker* factors when a delay is presumptively prejudicial.").

¶13 Evaluating the second factor, we first note that Woodland's trial was adjourned several times, and by Woodland's count, his trial was adjourned ten times. However, while some of the reasons for these adjournments are attributable to the State, several are not. In fact, some of the delays in this case are attributable to Woodland. For example, Woodland replaced his counsel late in 2018. Woodland also filed a substitution of judge request on July 22, 2019, which caused a delay after his case had been pending for over a year. "[I]f the delay is caused by the defendant, it is not counted." *State v. Urdahl*, 2005 WI App 191, ¶26, 286 Wis. 2d 476, 704 N.W.2d 324.

¶14 Significantly, however, several other delays are attributable to the COVID-19 pandemic during which trials and other court proceedings were put on hold for a period of time in 2020.[4] While trials resumed in July 2020, the result of pausing trials and other court proceedings in the midst of the pandemic was unprecedented. We, thus, do not attribute the delay caused by the pandemic to either party, and overall, we conclude that the second factor does not weigh in favor of a violation of Woodland's constitutional right to a speedy trial.

---

[4] Pursuant to WIS. STAT. § 902.01, we take judicial notice of orders from our supreme court and the Milwaukee County Circuit Court related to court operations during the COVID-19 pandemic.

¶15    Under the third factor, Woodland fails to appreciate that he first made a formal demand for a prompt disposition in June 2020, over two years after the charges in this case were filed and after his trial had already been adjourned several times.[5]  A defendant's "delay in demanding a speedy trial will be weighed against him."  *See* **Provost**, 392 Wis. 2d 262, ¶45 (citation omitted).  In fact, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."  **Urdahl**, 286 Wis. 2d 476, ¶33 (citation omitted).  Thus, Woodland's failure to assert his right to a speedy trial until June 2020 is a delay that weighs against a conclusion that Woodland's right to a speedy trial was violated.[6]

¶16    Turning to the fourth factor, we observe that Woodland was incarcerated during the pendency of these proceedings primarily as a result of a sentence from a prior case.  Thus, even had Woodland's case proceeded to trial prior to April 2021, Woodland would have remained incarcerated as a result of his prior sentence.  Thus, we are not persuaded that Woodland suffered any prejudice from the delay as a result of his incarceration during these proceedings or any anxiety resulting from that incarceration.  *See* **Provost**, 392 Wis. 2d 262, ¶¶49-50; **Urdahl**, 286 Wis. 2d 476, ¶35.

---

[5] We further observe that Woodland's trial was adjourned only twice following his demand for a speedy trial, and one of those adjournments was due to the fact that Woodland tested positive for COVID-19 and could not attend his own trial as a result.

[6] Woodland points to a *pro se* demand for a speedy trial pursuant to WIS. STAT. § 971.10 that he made on April 30, 2019.  Given that Woodland was represented by counsel at the time that he made this demand, we do not consider his *pro se* demand appropriate, and we do not discuss it further.  However, we do observe that this demand itself is nearly a year after the proceedings began in this case and itself is a delayed demand for a speedy trial.

¶17 Accordingly, considering the totality of the circumstances, we conclude that the ***Barker*** factors weigh against a conclusion that Woodland's right to a speedy trial was violated and rather indicate the opposite—namely, that Woodland's right to a speedy trial was not violated.

## II. Sufficiency of the Evidence

¶18 Woodland next argues that the evidence the State presented at trial was insufficient to support his conviction for the armed robbery of the GameStop store located at 3266 South 27th Street charged in Count III. In making this argument, Woodland contends that the evidence was insufficient because the State failed to present testimony from an employee of the GameStop store and based its case entirely on surveillance video of the robbery. We disagree.

¶19 A challenge to the sufficiency of the evidence to support a criminal conviction is a question of law that we review *de novo*. ***State v. Smith***, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. ***State v. Poellinger*** establishes the standards that we apply when reviewing the sufficiency of the evidence to support a conviction as follows:

> [We] may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

***Id.***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) (citations omitted). Additionally,

> [i]n reviewing the sufficiency of circumstantial evidence to support a conviction, [we] need not concern [ourselves] in any way with evidence which might support other theories of the crime. [We] need only decide whether the theory of guilt accepted by the trier of fact is supported by sufficient evidence to sustain the verdict rendered.

*Id.* at 507-08.

¶20    In this case, we conclude that the surveillance video considered within the context of the evidence of the other two armed robberies is sufficient evidence from which the jury could have drawn the appropriate inferences to find Woodland guilty of armed robbery of the GameStop store charged in Count III.

¶21    Turning to the surveillance video itself, the jury saw an individual in a hooded sweatshirt enter the GameStop store. The individual was holding something in his right hand, and the people at the counter held their hands up in the air. One of the employees behind the counter opened a register, placed the contents of the register in a bag, and then handed the bag to the hooded individual. The hooded individual then leaves the store with the bag, and the people in the store kneel on the ground with their hands in the air.

¶22    In addition to the video, the jury was also able to consider the context and the additional evidence of the other two armed robberies in which employees of the other GameStop store and the AT&T store testified that an individual in a hooded sweatshirt entered the stores, demanded money, and appeared to be holding a gun covered with a plastic bag in his right hand. The description of the armed robberies of these stores provided by the employees matches almost exactly the events witnessed by the jury in the surveillance video of the second GameStop store. Moreover, the clothing worn by the individual in the surveillance video matches the clothing worn by the individual who committed

the armed robberies of the other GameStop store and the AT&T store. The robberies also occurred around the same time that morning,[7] the Nissan seen driving away from the first robbery was found to have been rented to Woodland, and Woodland was identified—on surveillance video and using a receipt found in the Nissan—as having purchased blue latex gloves similar to the gloves worn in the robberies. Taken together, this evidence provides the jury with the reasonable inference that the same individual—Woodland—committed the armed robberies at all three locations, and thus committed the armed robbery charged in Count III.

¶23 Woodland argues that, absent testimony from an employee, the State failed to establish several elements of armed robbery, including the identity of the owner of the property, that the owner of the property did not consent to its taking, and that the individual in the video threatened anyone. *See* WIS JI—CRIMINAL 1480 (listing the elements of armed robbery). We disagree. Given the similarities and timing of all three robberies, the jury could reasonably conclude, as it relates to Count III, that the individual in the video was holding a firearm and took money from the cash registers without consent from GameStop and under the threat of using that firearm for a failure to comply.

¶24 Accordingly, we reject Woodland's argument that the State presented insufficient evidence to convict him of the armed robbery of the second GameStop store charged in Count III.

---

[7] As alleged in Count I, a GameStop store located at 10400 West Silver Spring Drive in the City of Milwaukee was robbed at 10:04 a.m. As alleged in Count II, an AT&T store located at 1236 Miller Park Way in the Village of West Milwaukee was robbed at 10:28 a.m. As alleged in Count III, a GameStop store located at 3266 South 27th Street in the City of Milwaukee was robbed at 10:41 a.m.

### III. Ineffective Assistance of Counsel

¶25 In his last two arguments, Woodland argues that he received ineffective assistance of counsel. "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective: (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *Id.* "If the defendant fails to prove either prong, we need not address whether the other prong was satisfied." *State v. Floyd*, 2016 WI App 64, ¶22, 371 Wis. 2d 404, 885 N.W.2d 156.

¶26 "To demonstrate deficient performance, the defendant must show that his counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). "In general, there is a strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional assistance.'" *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (citation omitted).

¶27 Prejudice occurs when counsel's error is of such magnitude that there is a "reasonable probability" that but for the error the outcome would have been different. *State v. Erickson*, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citations omitted).

¶28    "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. "We will not reverse the circuit court's findings of fact unless they are clearly erroneous." *Id.* "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel." *Id.*

¶29    A defendant is not automatically entitled to a hearing following a postconviction motion alleging ineffective assistance of counsel. "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *See State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," a trial court may deny a postconviction motion without a hearing. *See id.*, ¶9.

### A. Failure to Object to Repeated References about Woodland's Probationary Status

¶30    Woodland argues that trial counsel was ineffective for failing to object to repeated references to Woodland's probationary status. To evaluate his claim, we turn to the references made to his probationary status during his trial.

¶31    On the second day of trial, the State called Woodland's probation agent to testify about her identification of Woodland in two of the surveillance videos. Prior to doing so, the State told the court that it "want[ed] to point out [it] will be calling her as a witness, identifying who she is, and how she knows Mr. Woodland," but she would not be allowed to testify about "the specifics" of why Woodland was on probation. Trial counsel was hesitant about the testimony

12

saying, "We need to be really cautious about not going into things that are going to be more prejudicial than probative." Ultimately, the trial court allowed the testimony provided "she doesn't go into the specifics of what he was on probation for."

¶32     Woodland's probation officer then testified that she is a "probation and parole agent," she "c[a]me in contact with a person by the name of Corey Woodland" in her capacity "[a]s a probation officer," and Woodland was "somebody [she] supervised as a probation officer." She further testified that she had known Woodland for just over two years in her capacity as "his probation officer" and met with him at least a dozen times. She continued that she met with an officer who was investigating three armed robberies, and she identified Woodland in the surveillance videos that he showed her. The officer who interviewed Woodland's probation agent made an additional reference to Woodland's probation agent, and both parties referenced her in their closing arguments.

¶33     On appeal, Woodland argues that "the State went too far in its questioning" when "a foundational question or two would have been relevant to establish identification." He asserts that the testimony "portrayed a hardened criminal with at least two years of supervision who would be more likely than not to have committed the instant offenses." He then asserts that trial counsel was ineffective for failing to object to the repeated references of his probationary status.

¶34     We conclude that trial counsel was not deficient. As Woodland concedes in his brief, the questioning of Woodland's probation agent "should have been kept to a minimum, only to establish that she had a knowledge of the

13

defendant's identity." A review of the record shows that is exactly what happened. Woodland's probation agent never testified to the specifics of why Woodland was on probation, and her testimony merely established that she was Woodland's probation agent and she was familiar with Woodland based on her role as his probation agent.[8] Counsel, therefore, did not perform deficiently when Woodland's probation agent's testimony was so limited. *See **State v. Sanders***, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16 (stating that counsel does not perform deficiently for failing to bring a meritless motion). Thus, we conclude that trial counsel was not ineffective as it relates to any failure to object to references to Woodland's probationary status that were made during his trial, and the trial court acted within its discretion when it appropriately denied Woodland's motion without a hearing.

### B. Failure to Challenge the Admissibility of Dollar Tree Surveillance Video

¶35    In his last argument, Woodland argues that his trial counsel was ineffective for failing to object to the admission of surveillance video from a Dollar Tree store. As the State argued at trial, the video from the Dollar Tree store shows Woodland purchasing blue latex gloves of the same sort worn by the individual in the three armed robberies just prior to the armed robberies.[9] However, Woodland's issue arises from the fact that the State introduced the video through testimony of one of the investigating officers, and Woodland contends that by doing so the State failed to properly authenticate the video.

---

[8] In fact, Woodland concedes that some questioning on this topic "would have been relevant to establish identification."

[9] Indeed, a corresponding receipt for latex gloves was found in the Nissan rented to Woodland.

¶36 We conclude that trial counsel was not deficient for failing to object to the admission of the Dollar Tree surveillance video. As the trial court noted in its decision denying Woodland's motion, had trial counsel objected, the trial court would have overruled the objection, and a review of the record indicates that the trial court would have been correct in doing so. The video was introduced through the testimony of the officer who collected the video from Dollar Tree. It was also introduced in connection with a Dollar Tree receipt found in the Nissan Woodland rented. "One way to lay a foundation is through the '[t]estimony of a witness with knowledge that a matter is what it is claimed to be.'" *See* *State v. Giacomantonio*, 2016 WI App 62, ¶20, 371 Wis. 2d 452, 885 N.W.2d 394 (quoting WIS. STAT. § 909.015(1)). Moreover, authentication can be accomplished using circumstantial evidence of the sort introduced here. *See id.*, ¶¶19-21 (allowing authentication of text messages by the investigating officer who collected them).

¶37 In short, the video was properly authenticated. It is well-settled that trial counsel is not deficient for failing to make a meritless objection. *See Sanders*, 381 Wis. 2d 522, ¶29. Thus, we conclude that trial counsel was not ineffective in relation to the admission of the surveillance video of the Dollar Tree store, and the trial court acted within its discretion when it appropriately denied Woodland's motion without a hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.