COURT OF APPEALS
DECISION
DATED AND FILED

June 16, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2025AP1074-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2023CF253

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

SETH K. PINTER,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Lincoln County: ROBERT R. RUSSELL, Judge. *Order reversed and cause remanded with directions.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State appeals from a circuit court order dismissing criminal charges against Seth Pinter without prejudice. For the reasons explained below, we conclude that Pinter's constitutional right to a speedy trial was not violated, and we reject Pinter's arguments that we may affirm the court's order on other grounds and remand for the dismissal of the charges with prejudice. We reverse and remand with directions for the court to reinstate the criminal proceedings against Pinter.

## BACKGROUND

¶2 The State charged Pinter on August 8, 2023, with one count of second-degree sexual assault based on allegations that Pinter assaulted the victim on August 6, 2023.[1] A sexual assault nurse examiner (SANE) completed a forensic exam of the victim on August 6, but the SANE exam kit was not immediately sent to the Wisconsin State Crime Laboratory for testing.

¶3 Pinter was released from custody on August 8 or 9, 2023, after posting a cash bail, and he remained released on the charges in this case throughout the proceedings. At his initial appearance, Pinter waived the time limits for holding a preliminary hearing. Shortly thereafter, the circuit court scheduled Pinter's preliminary hearing—which Pinter ultimately waived—for November 20, 2023. Following the waiver, the State filed an information, which amended the second-degree sexual assault count to third-degree sexual assault and added one count of fourth-degree sexual assault.

---

[1] The State alleged that Pinter had sexually assaulted the same victim twice that day but that the first assault occurred in Oneida County.

¶4 Between November 2023 and March 2024, the circuit court and the parties held multiple scheduling conferences, and Pinter and the State filed discovery demands. On March 4, 2024, Pinter filed a motion in limine based on spousal privilege and a motion to suppress statements he had made to law enforcement. The court held a nonevidentiary motion hearing on June 10, 2024, at which the parties reached a consensus on the motion in limine. The court ordered briefing on Pinter's motion to suppress and scheduled a decision hearing for October 2, 2024.

¶5 In addition, at the June 10, 2024 hearing, the State informed the circuit court that it was "still waiting to hear from the lab on evidence so we're not ready to set trial yet for that reason." The State would later claim in its objections to Pinter's motion to dismiss that around the time of June 6, 2024, it discovered that the Lincoln County Sheriff's Office had failed to send the SANE exam kit to the crime lab for testing. Either later that month or in July 2024, the sheriff's office forwarded the SANE exam kit to the crime lab.

¶6 The circuit court granted Pinter's motion to suppress at the October 2, 2024 decision hearing. In addition, following the court's ruling, the parties discussed scheduling, and the court suggested another scheduling hearing for November 7, 2024. In response, defense counsel stated, "[O]ne of my concerns here is that DNA was collected and we don't have results and the case is a year-and-a-half old." Defense counsel requested that the court set a trial date based on counsel's belief that the crime lab would not begin testing the evidence until such a date was set. In turn, the State clarified that the court did not need to set a trial date for the crime lab to commence testing in sexual assault cases, and it explained that the SANE exam kit was sent to the lab "maybe 3 months ago." The State suggested setting the case for scheduling "in about 60 days and then

hopefully at least by then we will have some idea of how long it will take for the test results." Defense counsel stated, "I think we are at the mercy of the crime lab at the moment, so." The court set a scheduling conference for December 5, 2024.

¶7      On December 5, 2024, the State requested another scheduling conference, as the DNA results from the SANE exam kit had not yet been returned by the crime lab. The circuit court set another scheduling conference for February 13, 2025.

¶8      On February 12, 2025, Pinter filed a motion to dismiss the pending criminal action against him. Pinter argued that the State's "undue delay" violated his state and federal constitutional rights to a speedy trial. Pinter noted that the charges against him were filed in August 2023, yet he had not been provided with the DNA results and a trial date had not been set. Although Pinter referenced WIS. STAT. § 971.10 (2023-24)[2] in his motion, he acknowledged that he had not made a speedy trial demand pursuant to that statute, and his speedy trial argument centered on the factors from ***Barker v. Wingo***, 407 U.S. 514 (1972).[3]

¶9      The State filed a written response objecting to Pinter's motion to dismiss. In the response, the State explained that the sheriff's office had received the DNA results from the crime lab on January 7, 2025; the State had received the DNA results on or around March 19, 2025; and the State had mailed the DNA results to the defense on March 25, 2025.

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

[3] However, in response to the State's objection to his motion to dismiss, Pinter argued that he did request a trial date at the October 2, 2024 hearing and that WIS. STAT. § 971.10 "does not require" the use of the magic words "speedy trial."

¶10 The State further explained why the testing of the SANE exam kit was delayed, stating, "After the SANE exam was conducted, the Victim made statements about not wanting to pursue charges. The Deputy took this as not wanting the evidence tested." According to the State, the deputy completed a standard form following an interview with the victim, and the deputy indicated on that form that the victim did not want the SANE exam kit tested. The State claimed that when the form "was sent in, the crime lab received that form and did not test the results because of how that was checked." The State further alleged that "[f]or that reason, the SANE exam [kit] was labeled to save for records, but not tested," despite the Lincoln County District Attorney's Office's "belief that it was being tested." Further, the district attorney informed the circuit court that "it was my assumption … if we charge someone and the results are sent in that they are tested and so it wasn't and so we had to update the form and then it got tested and we have the results at this point." Additionally, the State asserted that at the time it charged Pinter, the crime lab "was taking about 12 months for DNA results."

¶11 The State also filed a motion to amend the information based on the crime lab's findings. Specifically, the State sought to amend the information to charge two counts of second-degree sexual assault by force, two counts of second-degree sexual assault with someone incapable of giving consent, and two counts of false imprisonment.

¶12 In reply to the State's objection to his motion to dismiss, Pinter reasoned that the State's argument that it did not submit the SANE exam kit to the crime lab due to the victim's statements was "illogical" because "[i]t's not a complaining witness … who decides whether or not to pursue charges, that's up to the State." Pinter further argued that the State's argument was illogical because

law enforcement arrested Pinter, and the State filed charges, almost immediately following the victim's allegations. Therefore, according to Pinter, "there was no delay in are we going to file charges or aren't we, they were filing charges."

¶13    Pinter also disputed the State's assertion that the crime lab had possession of the SANE exam kit at the start of the investigation. Pinter argued that he had received discovery from the State demonstrating that the crime lab did not receive the SANE exam kit until June 27, 2024.[4]

¶14    In addition, Pinter asserted that the State's delay in sending the SANE exam kit to the crime lab only compounded the overall delay if, as the State suggested, the crime lab was taking approximately twelve months to return DNA results. He further argued that, ultimately, the crime lab returned the DNA results to the State approximately six months after the State actually forwarded the SANE exam kit to the lab. Therefore, according to Pinter, had the State forwarded the SANE exam kit to the crime lab "in a timely fashion, all of this would have been available and we likely would have been proceeding to trial or proceeding to some other result."

¶15    The circuit court held a nonevidentiary hearing on Pinter's motion to dismiss on April 2, 2025. After oral arguments, the court made its findings of fact and conclusions of law. The court first determined that Pinter had not made a speedy trial demand. The court next expressed frustration with the crime lab's

---

[4] Pinter further argued that discovery from the State demonstrated that the crime lab did not receive "the buccal swab standards of Mr. Pinter" until July 10, 2024. There is little mention of a buccal swab in the record, and the parties do not mention a buccal swab on appeal. Ostensibly, the crime lab used the buccal swab to compare the SANE exam kit with Pinter's DNA. In any event, it appears undisputed that the buccal swab and the SANE exam kit were received by the crime lab within two weeks of each other.

general congestion and turnaround time, the State's "miss-steps" in handling the SANE exam kit, the State's motion to amend the information, and the fact that "we're months from getting a trial date."

¶16    Ultimately, the circuit court granted Pinter's motion to dismiss. Its decision rested largely on the presumptive prejudice afforded to Pinter based on the overall delay having exceeded one year. The court stated that some of the delays "were court-related too, and you have pointed that out, things happen, but the bottom line is once you get to one year on a case like this, … there is presumptive prejudice that has occurred." The court noted Pinter's anxiety from facing the charges, and it concluded that the State had failed to rebut this "subjective prejudice because [it] would have a very hard time to prove that" Pinter was not affected by the pending charges.

¶17    The circuit court dismissed the charges without prejudice after noting that Pinter had not specifically asked for dismissal with prejudice and that, regardless, the prejudice did "not rise to the level where dismissal should be with prejudice." The State now appeals.

## DISCUSSION

### I.  Constitutional speedy trial claim

¶18    The parties appear to agree that Pinter asserted a constitutional speedy trial claim before the circuit court, not a statutory speedy trial claim, and that the court applied the ***Barker*** factors. However, as the State correctly notes, the only remedy available for a violation of a defendant's constitutional right to a speedy trial is dismissal with prejudice, not the dismissal without prejudice ordered by the court. *See **State v. Ramirez**, 2025 WI 28, ¶55, 416 Wis. 2d 641, 22

N.W.3d 821. Therefore, it is clear that the circuit court erred by dismissing the charges against Pinter on constitutional speedy trial grounds without prejudice.[5]

¶19 Despite the circuit court's error, Pinter contends that we should affirm the court's order—in so far as this court agreeing, after applying the *Barker* factors, that his constitutional right to a speedy trial was violated—and that we should remand for dismissal of the charges with prejudice.[6] For its part, the State argues that we should reverse the circuit court's order and remand with directions for the court to reinstate the charges because Pinter's constitutional right to a speedy trial was not violated.

¶20 Whether Pinter's constitutional right to a speedy trial was violated is a question of law we review de novo. *See Ramirez*, 416 Wis. 2d 641, ¶29. "We uphold the circuit court's factual and credibility findings unless they are clearly erroneous." *Id.*

¶21 To determine whether a defendant's constitutional right to a speedy trial was violated, we apply the four-factor balancing test pronounced in *Barker*. *Ramirez*, 416 Wis. 2d 641, ¶30. These factors include: (1) the overall length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant. *Id.*

---

[5] Even if the circuit court had dismissed the charges on statutory speedy trial grounds, which neither party argues, dismissal without prejudice still would have been in error because the remedy for a statutory speedy trial violation is the defendant's discharge from custody. *See* WIS. STAT. § 971.10(4).

[6] In the alternative, Pinter asserts that the State's "failure to prosecute this case is a legal or discretionary basis for the circuit court to dismiss this case" under WIS. STAT. § 805.03, and he argues that this court should "find that … dismissal" is "with prejudice." (Formatting altered.) We address this argument in Section II of this opinion. *See infra* ¶¶45-48.

### A. *Length of the delay*

¶22 As to the first **Barker** factor—the length of the delay—the State filed the complaint on August 8, 2023, and the circuit court granted Pinter's motion to dismiss on April 2, 2025.[7] This delay of approximately 20 months is presumptively prejudicial and triggers the remainder of the **Barker** analysis. *See* **Ramirez**, 416 Wis. 2d 641, ¶31.

### B. *Reasons for the delay*

¶23 The second **Barker** factor—the reasons for the delay—"examines whether the state or the defendant is more to blame for the time that passed from accusation" to dismissal. *See* **Ramirez**, 416 Wis. 2d 641, ¶39. "When considering the reasons for the delay, courts first identify the reason for each particular portion of the delay and accord different treatment to each category of reasons." **State v. Urdahl**, 2005 WI App 191, ¶26, 286 Wis. 2d 476, 704 N.W.2d 324.

¶24 Pinter argues that any period of delay after the State's filing of the complaint should be weighed against the State because the entire delay was "caused by the [S]tate's failures with regard to the DNA evidence." However, as the State contends, the **Barker** "test recognizes that trials do not happen immediately after charging and that a reasonable amount of time is required for both parties to conduct" pretrial obligations. Our state supreme court has recognized this premise, stating that the "'time required for the orderly

---

[7] We agree with the State that the "appropriate end date" under the first factor is "typically the first day of trial" and that "[i]t is not clear what the appropriate end date is when the circuit court grants a pretrial motion to dismiss" based on speedy trial grounds. Consistent with the parties' arguments on appeal, we assume without deciding that the appropriate end date under the facts of this case is the date the circuit court granted Pinter's motion to dismiss.

administration of criminal justice' is not to be considered a 'delay' at all." ***Ramirez***, 416 Wis. 2d 641, ¶39 (citation omitted). "This includes the time that elapses due to pretrial requirements, such as filing the complaint; conducting the initial appearance, preliminary hearing, and arraignment; setting the trial date; and hearing pretrial motions, so long as they occur 'expeditiously without delay.'" ***Id.*** (citation omitted).

¶25 Here, the period from August 8, 2023 (when the State filed the complaint), to October 2, 2024 (when the circuit court granted Pinter's motion to suppress), is not properly characterized as a "delay" at all. During this nearly 14-month-long period, the circuit court held an initial appearance and set bond; Pinter waived the preliminary hearing time limits and waived a preliminary hearing; the court bound Pinter over for trial and the State filed an information; the parties each made discovery demands; Pinter filed his motion in limine and his motion to suppress; the parties briefed the motion to suppress; the court held oral argument on the motion to suppress; and the court issued a decision on the motion to suppress. Accordingly, this period comprised the time required for the orderly administration of criminal justice. *See **id.*** Moreover, there is no evidence in the record to suggest that these pretrial matters did not occur "expeditiously without delay." *See **id.*** (citation omitted). In sum, a trial would not have commenced until after October 2, 2024, even if the State had immediately forwarded the SANE exam kit to the crime lab, and we do not weigh the first 14 months of the proceedings against the State, much less the entire 20 months from the filing of the complaint to dismissal.

¶26 The period from October 2, 2024, to April 2, 2025,[8] when the circuit court granted Pinter's motion to dismiss, does, however, constitute a "delay" and does weigh against the State. The State concedes that this

> delay fell on the State because the Sheriff's Office did not send the [SANE exam kit] for testing until June 2024, ten months after the complaint was filed…. The DNA results should have been in both parties' hands as of October 2024, which would have enabled the circuit court at that point to set a trial date presumably at some point between October 2024 and when Pinter filed his motion to dismiss in February 2025.

¶27 The necessary question then becomes to what degree we weigh this delay against the State—i.e., whether the delay attributed to the State was caused by its own negligence or whether it was caused by its deliberate or bad-faith conduct. *See id.*, ¶41. Delays caused by "the State's negligence" are weighed against the State, "but not heavily," and delays "caused by deliberate or bad-faith conduct are weighed heavily against the State." *Id.*

¶28 The State asserts that the reason for the delay was a miscommunication between the district attorney's office and the sheriff's office regarding whether the SANE exam kit had been sent to the crime lab. According to the State, its "missteps in not sending the SANE [exam] kit for testing earlier and its poor communication on that point were certainly negligent, but there is no

---

[8] The State argues that the 50-day period between Pinter's filing of the motion to dismiss and the circuit court's decision granting that motion should not be attributed to the State because it was time necessary for the orderly administration of justice. Because this distinction would not affect our ultimate conclusion that Pinter's constitutional right to a speedy trial was not violated, we assume without deciding that the entire period from October 2, 2024, to April 2, 2025, is attributed to the State.

evidence or suggestion that it was deliberately or maliciously delaying proceedings." (Footnote omitted.)

¶29 Conversely, Pinter argues that the delay should "weigh heavily against" the State because the State hid from the circuit court at the June 10, 2024 hearing the fact that it had not sent the SANE exam kit to the crime lab "when the truth was, [the State] had only just (or were about to) submitted the kit to the lab"; the State argued against setting a trial date at the October 2, 2024 hearing after discovering that it had not sent the SANE exam kit to the lab; the State failed to apprise the court and the defense of the status of the SANE exam kit "until well after the defense move[d] to dismiss"; and the State maintained the position that the district attorney's office did not receive the DNA results from the lab until March 19, 2025, "even though the [sheriff's office] had the results since January 7, 2025."

¶30 As explained above, the circuit court characterized the State's actions with respect to the SANE exam kit as "miss-steps" (i.e., that the State made a mistake, not that it made a deliberate choice to delay trial). The court did not find that the State acted deliberately or in bad faith to delay a trial in order to hamper Pinter's defense. *See **Barker***, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government."). The record supports the circuit court's finding. *See **State v. Provost***, 2020 WI App 21, ¶¶29, 44, 392 Wis. 2d 262, 944 N.W.2d 23 (applying the clearly erroneous standard of review to a circuit court's findings regarding the reason for a delay).

¶31 To begin, the record reasonably demonstrates that the State did not discover that it had failed to send the SANE exam kit to the crime lab until around

June 6, 2024. This error was caused by a clerical mistake on the part of a deputy, not a deliberate or bad-faith action to delay a trial in order to hamper Pinter's defense. The State informed the circuit court that prior to its discovery of the error, it believed that the SANE exam kit was being tested.

¶32 Once the State discovered the error in June 2024, the record reasonably reflects that it did not deliberately delay a trial in order to hamper Pinter's defense. After the State discovered the error, the sheriff's office forwarded the SANE exam kit to the crime lab either later that month or in July 2024, and the lab received the SANE exam kit shortly thereafter. After completing the testing, the crime lab sent the DNA results to the sheriff's office, which received the DNA results on January 7, 2025, and the State received the DNA results from the sheriff's office on or around March 19, 2025.[9] The State then provided the DNA results to the defense by March 25, 2025.

¶33 Furthermore, the record reasonably demonstrates that the State did not deliberately delay a trial in order to hamper Pinter's defense by failing to inform the circuit court or the defense of its error. At the October 2, 2024 hearing, the State informed the circuit court and the defense that it had sent the SANE exam kit to the crime lab "maybe 3 months ago."[10] Therefore, both the court and

---

[9] Pinter cites no factual evidence from the record to support his argument that the State received the DNA results prior to March 19, 2025. Pinter cites no authority for an argument that the fact that the sheriff's office received the DNA results on January 7, 2025, equates to the district attorney's office receiving them before March 19.

[10] Pinter is correct that the State did not inform the circuit court of its error at the June 10, 2024 hearing. The State instead told the court that it was "still waiting to hear from the lab on evidence so we're not ready to set trial yet for that reason."

(continued)

13

the defense were aware as early as October 2024 that the SANE exam kit was not immediately sent to the crime lab upon the State's charging of Pinter. For the reasons explained, the circuit court's finding that the State acted negligently is supported by the record, and we weigh the period from October 2, 2024, to April 2, 2025, against the State, but not heavily. *See Ramirez*, 416 Wis. 2d 641, ¶41.

¶34 In total, there was a 20-month period between the State's charging of Pinter and the circuit court dismissing the charges without prejudice. At most, there were six months of actual delay in this case, which we weigh against the State, but not heavily. The remaining nearly 14-month period is not considered a "delay" at all because it comprised the time required for the orderly administration of criminal justice.

### C. Assertion of speedy trial right

¶35 We next consider, under the third *Barker* factor, whether Pinter asserted his right to a speedy trial and, if so, when he asserted that right. *See Ramirez*, 416 Wis. 2d 641, ¶49. "Though a defendant's failure to demand a speedy trial will not constitute a waiver of the right, the defendant's complete failure or delay in demanding a speedy trial will be weighed against him." *Hatcher v. State*, 83 Wis. 2d 559, 568, 266 N.W.2d 320 (1978) (citation omitted).

---

The circuit court never found that the State misled or lied to the court or the defense. Indeed, the record is unclear as to whether the State had discovered the error by the time the hearing was held. The State repeatedly asserted before the circuit court that it had discovered "around June 6, 2024," that the SANE exam kit was not sent to the crime lab for testing. Based on the State's assertions before the court that the error was discovered "*around* June 6, 2024," a logical inference is that the error was unknown to the State at the June 10, 2024 hearing. (Emphasis added.)

¶36    Pinter argues that the circuit court erred by finding that he did not assert his right to a speedy trial prior to filing the motion to dismiss. According to Pinter, he asserted his right at the October 2, 2024 hearing when his defense counsel expressed "concerns" about not having received the DNA results and requested that the court set a trial date based on counsel's belief that the crime lab would not begin testing the evidence until such a date was set. According to Pinter, these statements at the October 2, 2024 hearing were sufficient to invoke his "statutory right" to a speedy trial under WIS. STAT. § 971.10.

¶37    Neither party addresses whether we review the circuit court's determination that Pinter did not assert his right to a speedy trial at the October 2, 2024 hearing under the clearly erroneous standard of review or the de novo standard. Even applying de novo review, we agree with the State that Pinter's claim that he asserted his right to a speedy trial at the October 2, 2024 hearing is unreasonable because "nothing that Pinter did at or following the October hearing was consistent with a speedy trial demand." We adopt the State's following argument:

> Although Pinter's counsel expressed concern [at the October 2, 2024 hearing] that the DNA test results were not yet available, an expression of concern is not specific enough to put the government on notice that the defendant is demanding a speedy trial. Additionally, counsel's suggestion that setting a trial date might speed up the crime lab's testing cannot reasonably be interpreted to be a statutory speedy trial demand. No one treated it as such. An effective oral or written demand requires trial to commence within 90 days. WIS. STAT. § 971.10(2)(a). Had the court, the prosecutor, or counsel believed Pinter to be making such a demand, they would have either discussed scheduling trial within 90 days or granting the remedy for not doing so ….
>
> Nor is it reasonable to construe counsel's statements as assertions of Pinter's constitutional speedy trial rights. Again, neither party nor the court reacted to counsel's

> suggestions as such. To the contrary, they did not set a trial date, and they agreed to set a scheduling conference for December [2024].

¶38 In short, we conclude that Pinter did not assert his right to a speedy trial, under either WIS. STAT. § 971.10 or the Sixth Amendment to the United States Constitution, prior to filing his motion to dismiss in February 2025. While Pinter did assert his right to a speedy trial in February 2025, his assertion came 555 days after the State filed charges. We conclude that given Pinter's delay in asserting his right and the fact that the State did not have an opportunity to bring Pinter to trial following his assertion, this factor weighs against Pinter's claim that his constitutional right to a speedy trial was violated. *See Ramirez*, 416 Wis. 2d 641, ¶49.

### D. Prejudice

¶39 Next, under the fourth *Barker* factor, we assess the prejudice to Pinter as a result of the pretrial delay. *See Ramirez*, 416 Wis. 2d 641, ¶31. In assessing this factor, we consider three interests: oppressive pretrial incarceration; anxiety and concern; and the possibility the defense will be impaired. *Id.*, ¶51.

¶40 On appeal, Pinter echoes the circuit court's reasoning that he has proven prejudice because the State failed to rebut the "presumption" of prejudice. To the extent that Pinter argues, or the circuit court decided, that he was prejudiced as a matter of law simply due to the length of the delay itself and without reference to the other *Barker* factors, we conclude that this position is inconsistent with binding precedent.

¶41 "The total length of the delay in and of itself weighs against the State only insofar as we presume that prejudice caused by pretrial delay 'intensifies over

time.'" ***Ramirez***, 416 Wis. 2d 641, ¶34 (citation omitted). "[C]ourts generally do not hold a defendant has been prejudiced as a matter of law until the delay reaches five to six years." ***Id.***, ¶53 n.8. "Even if the delay was prejudicial as a matter of law, 'such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other ***Barker*** criteria.'" ***Id.***, ¶34 (citation omitted).

¶42      This case was pending for 20 months prior to the circuit court granting Pinter's motion to dismiss. At most, the State negligently extended the pretrial period by six months, which does not, by itself, give rise to prejudice as a matter of law. *See id.*, ¶53 & n.8; ***Doggett v. United States***, 505 U.S. 647, 658 (1992) ("When the Government's negligence … causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." (footnotes omitted; citations omitted)).

¶43      Moreover, Pinter fails to develop an argument as to how any of the three interests considered under this ***Barker*** factor were impaired. We note that Pinter posted his cash bail and was released from custody on the charges at issue almost immediately after the State filed the complaint. Furthermore, Pinter has not explained how the delay impaired his defense, and the circuit court never considered this interest in granting Pinter's motion to dismiss. And, as the State argues, "while Pinter likely has been anxious and concerned about the pending charges, there is no evidence that his anxiety and concern exceeded or has gone on significantly longer than what anyone charged with a serious felony would experience." To the extent that Pinter suffered any professional consequences, as he argued in the circuit court, these consequences were the result of the State's

17

charges against him, not from any delay negligently caused by the State. Given the foregoing, we conclude the prejudice factor does not weigh in Pinter's favor.

### E. Balancing

¶44 On balance, we conclude that Pinter's constitutional right to a speedy trial was not infringed. At most, the State negligently extended the pretrial period by six months. As explained above, the remaining 14-month pretrial period is not accurately characterized as a "delay" at all. Given the relatively short period of actual delay, Pinter's failure to demonstrate—or even argue—any particularized prejudice, and the fact that Pinter did not assert his statutory or constitutional right to a speedy trial until he filed his motion to dismiss, the State did not violate Pinter's constitutional right to a speedy trial.

## II. Failure to prosecute

¶45 Pinter contends that we may still affirm, in part, the circuit court's order because "[i]n addition to the [c]onstitutional speedy trial violation by the [S]tate, the [S]tate's failure to prosecute this case is a legal or discretionary basis for the circuit court to dismiss this case." (Formatting altered.) Pinter argues that we should "affirm the order dismissing this case for failure of the [S]tate to prosecute," pursuant to WIS. STAT. § 805.03, "because the ruling is correct and there is a factual underpinning in the record which would support the dismissal" with prejudice on this basis. A decision under § 805.03 "to impose sanctions and the decision of which sanctions to impose, including dismissing an action with prejudice, are within a circuit court's discretion." *Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898.

¶46    Here, as the State argues, the potential applicability of WIS. STAT. § 805.03 to the facts of this case is not properly before us because "Pinter never moved for a remedy under that statute." While a respondent may advance for the first time on appeal any argument that will sustain a circuit court's ruling, if we were to adopt Pinter's position with respect to § 805.03, we would not be sustaining the court's decision; rather, we would be affirming the circuit court's order in part and reversing it in part because the court dismissed the charges *without* prejudice. *See **State v. Holt***, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds*, WIS. STAT. § 940.225(7) (explaining that as a matter of judicial efficiency, a respondent may advance for the first time on appeal any argument that would *sustain* the circuit court's ruling).

¶47    Moreover, the circuit court did not address whether dismissal was warranted under WIS. STAT. § 805.03 or otherwise make a discretionary ruling on that issue that this court can review. *See **Industrial Roofing Servs., Inc.***, 299 Wis. 2d 81, ¶41 ("A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." (citation omitted)); *cf. **Mueller v. Mizia***, 33 Wis. 2d 311, 318, 147 N.W.2d 269 (1967) ("Whether the ground assigned by the trial judge … is correct is immaterial if, in fact, the ruling is correct and the record reveals a factual underpinning that would support the proper findings."). This fact is fatal to Pinter's request that we affirm the court's order on these grounds.

¶48    Regardless, a holding that WIS. STAT. § 805.03 authorizes a circuit court to dismiss with prejudice a criminal complaint before trial would seemingly contradict our state supreme court's holding that "trial courts of this state do not possess the power to dismiss a criminal case with prejudice prior to the attachment

19

of jeopardy except in the case of a violation of a constitutional right to a speedy trial." *See* **State v. Braunsdorf**, 98 Wis. 2d 569, 586, 297 N.W.2d 808 (1980); *see* **State v. Killian**, 2023 WI 52, ¶25, 408 Wis. 2d 92, 991 N.W.2d 387 (discussing when jeopardy attaches). Accordingly, we refuse Pinter's invitation to "affirm the order"—on grounds not addressed by the circuit court—and reverse with directions to dismiss the charges with prejudice.

¶49 Based on our conclusion that Pinter's constitutional right to a speedy trial was not violated, we reverse the circuit court's order dismissing the criminal proceedings against Pinter, and we remand with directions for the court to reinstate the proceedings.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.